# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

LAQUITA HOUSTON,

    Plaintiff,

v.                                                                           Civ. No. 18-570 KK

ANDREW SAUL, Commissioner
of the Social Security Administration,[1]

    Defendant.

## MEMORANDUM OPINION AND ORDER[2]

THIS MATTER is before the Court on the Social Security Administrative Record (Doc. 11), filed August 24, 2018, in support of Plaintiff Laquita Houston's Complaint (Doc. 1) seeking review of Defendant the Commissioner of Social Security's decision denying her claim for disability insurance benefits. On October 19, 2018, Ms. Houston filed a Motion to Reverse and Remand to Agency for Rehearing, with Supporting Memorandum. (Doc. 15.) The Commissioner filed a response in opposition to the motion on December 28, 2018, (Doc. 17), and Ms. Houston filed a reply in support of the motion on January 5, 2019. (Doc. 18.)

The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being otherwise fully advised, the Court finds that Ms. Houston's motion is well taken and should be GRANTED.

---

[1] Andrew Saul was confirmed as the Commissioner of Social Security on June 4, 2019, and is automatically substituted as a party under 42 U.S.C. § 405(g) and Federal Rule of Civil Procedure 25(d).

[2] Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have consented to the undersigned to conduct dispositive proceedings and order the entry of final judgment in this case. (Doc. 7.)

1

## I. Background and Procedural History

Ms. Houston alleges that she became disabled on December 18, 2013, at forty-eight years of age, due to bipolar disorder, anxiety disorder, arthritis, fibromyalgia, hepatitis C, and bradycardia. (AR 276, 284.[3]) She later amended her alleged onset date to July 1, 2015. (AR 47, 82.) Ms. Houston completed the eleventh grade and then earned a GED. (AR 83.) In the relevant past, she worked at a Denny's restaurant as a server, a hostess, and an "R.P." (which Ms. Houston described as a "representative" for the restaurant's managers); she also worked as a home healthcare provider for her uncle. (AR 83-86, 96.)

On January 6, 2014, Ms. Houston filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (AR 119.) Her application was denied initially on July 11, 2014, and on reconsideration on September 12, 2014. (AR 127-28, 139-40.) On September 18, 2014, Ms. Houston requested a hearing before an Administrative Law Judge ("ALJ"). (AR 155.) ALJ Eric Weiss conducted a hearing on September 8, 2016. (AR 76.) Ms. Houston appeared in person at the hearing with her attorney, Gary Martone. (*Id.*) The ALJ took testimony from Ms. Houston and from an impartial vocational expert ("VE"), Cornelius Ford. (AR 77, 83-115.) On February 27, 2017, the ALJ issued an unfavorable decision. (AR 47-56.) The Appeals Council denied Ms. Houston's request for review on April 19, 2018. (AR 1-3.) As a consequence, the ALJ's decision became the Commissioner's final decision. (*Id.*)

## II. Applicable Law

### A. Disability Determination Process

A person must be "under a disability" to qualify for Title II disability insurance benefits. 42 U.S.C. § 423(a)(1)(E). An individual is considered to be "under a disability" if she is unable

---

[3] Citations to "AR" are to the transcript of the Administrative Record lodged in this case on August 24, 2018. (Doc. 11.)

to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).

The Commissioner has adopted a five-step sequential analysis to determine whether a person satisfies the statutory criteria:

(1) At step one, the ALJ must determine whether the claimant is engaging in "substantial gainful activity."[4] If the claimant is engaging in substantial gainful activity, she is not disabled regardless of her medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment (or combination of impairments) that is severe and meets the duration requirement, she is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment meets or equals in severity one of the listings described in Appendix 1 of 20 C.F.R. Part 404, Subpart P, and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If none of the claimant's impairments meet or equal one of the listings, the ALJ must determine at step four whether the claimant can perform her "past relevant work." This step involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ must consider all of the relevant evidence and determine what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* Second, the ALJ must determine the physical and mental demands of the claimant's past relevant work. Third, the ALJ must determine whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is able to perform her past relevant work is not disabled.

(5) If the claimant is unable to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the

---

[4] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). "[W]ork may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." *Id.* "Gainful work activity is work activity that you do for pay or profit." 20 C.F.R. § 404.1572(b).

> Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant bears the burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing other work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step evaluation process is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991); 20 C.F.R. § 404.1520(a)(4).

### B. <u>Standard of Review</u>

This Court must affirm the Commissioner's final decision denying social security benefits unless: (1) "substantial evidence" does not support the decision; or, (2) the ALJ did not apply the correct legal standards in reaching the decision.[5] 42 U.S.C. §§ 405(g), 1383(c)(3); *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). The Court must meticulously review the entire record but may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008); *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere

---

[5] Judicial review is limited to the Commissioner's final decision, which is generally the ALJ's decision. *Silva v. Colvin*, 203 F. Supp. 3d 1153, 1155 n.1 (D.N.M. 2016). "This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision." *Id.*

scintilla of evidence supporting it." *Id.* Although the Court may not re-weigh the evidence or try the issues *de novo*, its consideration of the record must include "anything that may undercut or detract from the [agency]'s findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the agency's] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Thus, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the ALJ . . . must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

### III. **Analysis**

The ALJ determined that Ms. Houston is not disabled at step five of the sequential evaluation process. (AR 55.) At step one, the ALJ found that Ms. Houston met the insured status requirements through March 30, 2019, and has not engaged in substantial gainful activity since the amended alleged onset date of July 1, 2015. (AR 50.) At step two, the ALJ found that Ms. Houston has the severe impairments of fibromyalgia, cervicalgia, chronic hepatitis C, bipolar disorder, osteoarthritic degenerative changes to the left hand, and cardiac dysrhythmias status post pacemaker implant. (AR 50.) The ALJ determined at step three that Ms. Houston does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 50.)

At step four, the ALJ found that Ms. Houston has the RFC to perform a limited range of light work as defined by 20 C.F.R. § 404.1567(b). (AR 52.) Specifically, he found that Ms. Houston has the RFC

> to occasionally lift 20 pounds and can frequently lift or carry up to 10 pounds. [She] is able to stand and walk for approximately six hours in an eight-hour work day and sit for six hours in an eight-hour workday. She can occasionally stoop, crouch, kneel, crawl and climb ramps or stairs but can never climb ladders, ropes or scaffolds. She can frequently handle and finger but must avoid more than occasional exposure to unprotected heights. [She] can understand and carry out simple instructions and make commensurate work-related decisions in a work setting with few changes. She can occasionally interact with supervisors, co-workers and the public. She can maintain concentration, persistence and pace for two hours at a time during a workday with normal breaks.

(AR 51-52.)

Based on this RFC and the VE's testimony, the ALJ concluded that Ms. Houston cannot perform her past relevant work as a server or home healthcare provider because the skill level required for both of these jobs, and the exertional level required for the home healthcare provider job, exceed her present capacity. (AR 54.) However, at step five, the ALJ concluded that Ms. Houston can meet the requirements of the representative occupations of wire cutter, coupon sorter, and plastic press molder. (AR 55.) On this basis, the ALJ determined that Ms. Houston can adjust to other work that exists in significant numbers in the national economy and is not disabled. (*Id.*)

In her motion, Ms. Houston claims that the ALJ erred at step five in concluding that she can adjust to other work that exists in significant numbers in the national economy. (Doc. 15 at 1.) Ms. Houston makes two arguments in this regard. First, she argues that the ALJ erred by failing to resolve a conflict between the *Dictionary of Occupational Titles* ("DOT") and the VE's testimony, as required by Social Security Ruling ("SSR") 00-4p and Tenth Circuit law. (*Id.* at 4-6.) Second, she argues that the ALJ committed reversible error by failing to analyze whether the

representative occupations the VE identified exist in significant numbers in the national economy. (*Id.* at 6-7.)

### A. The ALJ erred by failing to obtain an explanation for an apparent conflict between the DOT and the VE's testimony.

"In making disability determinations," the Commissioner relies "primarily on the DOT" at steps four and five of the sequential evaluation process. SSR 00-4p, 2000 WL 1898704, at *2. Nonetheless, ALJs may also use VEs "at these steps to resolve complex vocational issues." *Id.* A VE's evidence should generally "be consistent with the occupational information supplied by the DOT." *Id.* As such, an ALJ who takes testimony from a VE assumes certain affirmative responsibilities. First, where a VE provides evidence about a job's requirements, the ALJ must "[a]sk the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT." *Id.* at *4. Second,

> [w]hen there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled.

*Id.* at *2. Finally, the ALJ must resolve any actual conflicts, and explain how he did so, before relying on the VE's testimony. *Id.* at *4.

> Neither the DOT nor the VE . . . evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.

*Id.* at *2.

The DOT uses the acronym "GED" to refer to General Educational Development, which

> embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective. Ordinarily, such education is obtained in elementary school, high school, or college. However, it may be obtained from experience and self-study. The GED Scale is

7

composed of three divisions: Reasoning Development, Mathematical Development, and Language Development.

*Dictionary of Occupational Titles*, App. C, 1991 WL 688702. Within each of the GED's three divisions, in turn, there are six levels, each of which corresponds to a specified set of abilities. *Id.*

In *Hackett v. Barnhart*, the Tenth Circuit was asked to decide whether a limitation to simple and routine tasks precluded a claimant from working in a position requiring a GED Reasoning Development level of three. 395 F.3d 1168, 1176 (10th Cir. 2005). The *Hackett* claimant's RFC provided that, "[m]entally, [the claimant] retains the attention, concentration, persistence and pace levels required for simple and routine work tasks." *Id.* at 1176 (citation and internal quotation marks omitted). Based on this RFC, a VE at the claimant's administrative hearing testified that she could work as a call-out operator or a surveillance-system monitor, both of which require level-three reasoning. *See id.* The claimant argued, however, that "her RFC, as found by the ALJ, [was] incompatible with jobs requiring a reasoning level of three." *Id.*

To decide the issue, the *Hackett* court looked to the DOT's plain language. The DOT defines level-three reasoning as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form[, and d]eal with problems involving several concrete variables in or from standardized situations." *Id.* (alterations in original) (quotation marks omitted). The Tenth Circuit then compared that definition with level-two reasoning, which requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with problems involving a few concrete variables in or from standardized situations." *Id.* (alterations in original) (quotation marks omitted). By comparing the two levels, the Tenth Circuit determined that the claimant's limitation to "'simple and routine work tasks' . . . seems inconsistent with the demands of level-three reasoning." *Id.* (citation omitted). Rather, the Tenth Circuit opined, "level-two reasoning appears

more consistent with [the p]laintiff's RFC." *Id.* The *Hackett* court therefore reversed the relevant portion of the ALJ's decision and remanded to "to allow the ALJ to address the apparent conflict between [the claimant's] inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the VE." *Id.*

Ms. Houston's conflict argument concerns the representative occupation of coupon sorter, which, per the DOT, requires level-three reasoning.[6] *Dictionary of Occupational Titles*, 290.477-010, 1991 WL 672553. Ms. Houston argues that, as in *Hackett*, her RFC is incompatible with level-three reasoning because it limits her to understanding and carrying out simple instructions and making commensurate work-related decisions in a work setting with few changes. (Doc. 15 at 4-6.) As such, Ms. Houston argues that the ALJ erred in failing to address the conflict between the DOT's assignment of level-three reasoning to the coupon sorter job and the VE's testimony that a hypothetical individual with her RFC could meet the job's requirements. (*Id.*; *see* AR 55.)

In light of SSR 00-4p and *Hackett*, the Court finds that the ALJ committed reversible error by failing to obtain a reasonable explanation for the apparent conflict between the DOT and the VE's testimony in this case. As an initial matter, *Hackett*, which is controlling Tenth Circuit precedent, clearly indicates that there is an apparent conflict between the DOT and the VE's testimony. At the administrative hearing, the VE testified that a hypothetical individual with Ms. Houston's RFC, including the ability to "understand and carry out simple instructions and make commensurate work-related decisions in a work setting with few changes," could work as a coupon sorter. (AR 55, 109-13.) However, *Hackett* holds that a claimant's limitation to simple and routine

---

[6] According to the DOT, the two other representative occupations on which the ALJ relied, *i.e.*, plastic press molder and wire cutter, are jobs that require level-two reasoning. *Dictionary of Occupational Titles*, 556.685-022, 1991 WL 683478 (plastic-press molder); *id.*, 728.684-022, 1991 WL 679684 (wireworker). Ms. Houston appears to concede that her RFC is compatible with level-two reasoning.

9

work "seems inconsistent with the demands of level-three reasoning," 395 F.3d at 1176, which the coupon sorter job requires. *Dictionary of Occupational Titles*, 290.477-010, 1991 WL 672553.

Nevertheless, the ALJ failed to acknowledge or obtain a reasonable explanation for this apparent conflict. The ALJ did ask the VE if his testimony was "consistent with the DOT," to which the VE responded, "Yes, your honor." (AR 111.) However, the ALJ did not ask the VE to elaborate further, explain his thought process, or address any apparent conflict between Ms. Houston's RFC and the functional demands of the representative occupations the VE listed. (*Id.*) In particular, neither the ALJ nor the VE addressed the DOT's reasoning requirement for the coupon sorter job, and whether a hypothetical individual with Ms. Houston's RFC could meet it. Rather, based solely on the ALJ's perfunctory question and the VE's perfunctory answer, the ALJ reached the perfunctory conclusion that the VE's testimony was "consistent with the information contained in the [DOT]." (AR 55.)

"Determining the functional demands and job duties of specific jobs and matching those requirements to a claimant's limitations is the very task the ALJ must undertake at step five." *Haddock v. Apfel*, 196 F.3d 1084, 1090 (10th Cir. 1999). As previously noted, "the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Id.* at 1091. When an ALJ "settle[s] for a summary conclusion" instead of "ask[ing] the VE to explain his thought process" regarding an apparent conflict between the DOT and the VE's testimony, a reviewing court cannot determine whether the ALJ's decision is supported by substantial evidence. *Id.* at 1089-90.

Here, by settling for the VE's cursory assertion that his testimony was consistent with the DOT, the ALJ failed to develop a sufficient factual basis to support his conclusion that Ms.

10

Houston's RFC is compatible with the coupon sorter job. In so doing, the ALJ also failed to satisfy his obligation under SSR 00-4p to obtain a reasonable explanation for the apparent conflict between the DOT and the VE's testimony. *See* SSR 00-4p, 2000 WL 1898704 at *4. The Court does not hold that Ms. Houston's RFC is, in fact, incompatible with any particular job requiring level-three reasoning, and *Hackett* does not compel such a conclusion. However, both *Hackett* and SSR 00-4p do oblige the ALJ to explicitly address and, if necessary, resolve the apparent conflict in the first instance. 395 F.3d at 1176; SSR 00-4p, 2000 WL 1898704 at *4.

Seeking to avoid remand, the Commissioner first suggests that the DOT's Specific Vocational Preparation ("SVP") scale,[7] rather than its GED Reasoning Development scale, should be used to address Ms. Houston's limitation to simple, routine tasks. (Doc. 17 at 7-8.) Though his argument on this point is not entirely clear, the Commissioner appears to contend that there is no conflict between the DOT and the VE's testimony because all of Ms. Houston's past jobs have an SVP level of three or higher, all of the representative occupations the VE identified (including the coupon sorter job) have an SVP level of two, and thus Ms. Houston's work experience and the SVP levels of the representative occupations the VE listed are compatible. (*Id.*)

The Commissioner's argument misses the point. A job's SVP level is one factor an ALJ must consider in determining whether a claimant can meet the job's mental demands, but it is not the only factor, nor is it necessarily the most indicative one. Rather, the ALJ must also consider, *inter alia*, a claimant's general level of formal and informal education, for which GED levels account. *See* 20 C.F.R. § 404.1560(c)(1) (Commissioner considers RFC and vocational factors of age, education, and work experience to decide whether claimant can adjust to other work);

---

[7] SVP refers to "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Dictionary of Occupational Titles*, App. C, 1991 WL 688702.

11

*Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013) (unpublished) (claimant's education is one vocational factor that bears on ALJ's ultimate determination of whether claimant can adjust to other work at step five).

Other courts have found that a job's GED Reasoning Development level is more indicative of whether a claimant limited to simple, routine tasks can meet its mental demands than an "unskilled" SVP level. *McHerrin v. Astrue*, 156 Soc. Sec. Rep. Serv. 598, 2010 WL 3516433, at *6 (E.D. Pa. filed Aug. 31, 2010) (citing cases); *see also, e.g., Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012) ("While the jobs cited by the VE happen to be unskilled, that just accounted for issues of skill transfer, not impairment of mental functions – which are not skills, but, rather, general prerequisites for most work at any skill level.") (quotation marks omitted); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (holding that a limitation to unskilled work did not account for several effects of mental impairment); *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997) (explaining that many unskilled jobs require more than the mental capacity to follow simple instructions); *Cooper v. Barnhart*, 2004 WL 2381515, at *4 (N.D. Okla. filed Oct. 15, 2004) (finding that a limitation to simple tasks appears more squarely addressed by a job's reasoning level than its SVP level); SSR 85-15, 1985 WL 56857, at *6 ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job."). Thus, the Court is not persuaded that the coupon sorter job's low SVP level neutralizes or supplants the apparent conflict between the job's reasoning level and the VE's testimony that a person with Ms. Houston's RFC could meet its mental demands.

Turning to his next argument, the Commissioner points out that the ALJ included the limitation to simple, routine tasks in Ms. Houston's RFC to account for her bipolar disorder, which (a) she has had since she was a teen, (b) improved "dramatically" after she sought treatment, and (c) was "controlled" by the fall of 2011.[8] (Doc. 17 at 4-10.) The Commissioner further notes that Ms. Houston has worked in the relevant past as a home healthcare aide and in the remote past as a hairdresser, and that these jobs require level-three and level-four reasoning respectively.[9] (*Id.*) The Commissioner suggests that, because Ms. Houston was able to work at jobs requiring level-three reasoning or higher in the past despite her bipolar disorder, she necessarily remains able to do so now, when the disorder is controlled. (*Id.*) Consequently, according to the Commissioner, there is no conflict between the DOT and the VE's testimony that a person with Ms. Houston's RFC can meet the requirements of a level-three reasoning job, *Hackett* notwithstanding. (*Id.*)

There are three flaws in this argument that prevent the Court from relying on it. First, in support of his argument, the Commissioner tries to distinguish *Hackett* by asserting that "[t]he claimant in *Hackett* did not have a history of successfully performing Reasoning Development 3 occupations prior to her alleged period of disability, but [Ms. Houston] does." (Doc. 17 at 9.) In fact, however, the *Hackett* claimant *did* have a prior history of successfully performing jobs that appear to require a reasoning level of three or higher, including "checker/cashier,"[10] "wedding

---

[8] Though the Commissioner asserts that Ms. Houston's bipolar disorder is "*very well*-controlled," (Doc. 17 at 5 (emphasis added)), neither the ALJ's decision nor the Commissioner's citation to the record supports this assertion. It is true that, in 2015 in the context of a follow-up appointment regarding her pacemaker, Ms. Houston's cardiologist noted that her bipolar disorder was "controlled." (AR 689.) However, as the ALJ observed, a treating social worker opined, also in 2015, that the disorder was only in "partial remission"; and, in 2016, another treating social worker noted that Ms. Houston was disheveled, anxious, sleeping poorly, and having to "work at it" to concentrate. (AR at 53, 641-42, 1257-67.) Thus, the ALJ acknowledged that bipolar disorder is a "genuine condition" with which Ms. Houston has "long wrestled" and that she still has "breakthrough symptoms." (AR 54.)

[9] The Commissioner acknowledges that Ms. Houston's past relevant work as a server at Denny's required only level-two reasoning. (Doc. 17 at 5); *see Dictionary of Occupational Titles*, 311.677-014, 1991 WL 672695.

[10] *See Dictionary of Occupational Titles*, 211.462-014, 1991 WL 671841 ("cashier-checker" job requires level-three reasoning).

13

coordinator,"[11] and "occupational therapist."[12]  *Hackett*, 395 F.3d at 1170.  In short, the *Hackett* claimant's work history was at least as demanding as Ms. Houston's, and the decision is not distinguishable on this basis.

Second, in the RFC he assigned, the ALJ limited Ms. Houston to "simple work in a stable work setting where only occasional social interaction is required," limitations that would clearly prevent her from working as a home healthcare provider or hairdresser.  (AR 54.)  Likewise, and consistent with the VE's testimony at the administrative hearing, the ALJ found that Ms. Houston cannot perform her past work as a home healthcare provider because it exceeds her present skill and exertional capacities.[13]  (AR 54, 109-10.)  In these respects, the ALJ's decision indicates that Ms. Houston's work-related abilities, including her mental abilities, have *decreased* since she was last able to meet the requirements of a level-three reasoning job, rather than having improved or remained stable as the Commissioner suggests.

The third problem with the Commissioner's argument is that, as it presently stands, the record lacks any indication that the ALJ relied on Ms. Houston's past work experience and/or improved bipolar symptoms to find that she could meet the demands of a job requiring level-three reasoning notwithstanding the limitations in her RFC.  Indeed, the record is devoid of any indication at all why the ALJ decided that Ms. Houston could meet the requirements of such an occupation notwithstanding the RFC he gave her.

---

[11] *See Dictionary of Occupational Titles*, 299.357-018, 1991 WL 672625 ("wedding consultant" job requires level-four reasoning).

[12] *See Dictionary of Occupational Titles*, 076.121-010, 1991 WL 646761 ("occupational therapist" job requires level-five reasoning).

[13] The ALJ did not explore Ms. Houston's past work as a hairdresser at the administrative hearing and did not address whether Ms. Houston could still meet the demands of this job in his decision.  (*See* AR 54-55, 83-96, 108-13.)

As noted above, the Commissioner is correct that *Hackett* did not foreclose the possibility that some claimants restricted to simple, routine work may be able to perform some jobs requiring level-three reasoning. (Doc. 17 at 9.) However, the *Hackett* court did hold that, when a claimant is limited to simple, routine tasks, the ALJ must address the claimant's ability to perform work requiring level-three reasoning in a factually specific manner. *Hackett,* 395 F.3d at 1176. This the ALJ failed to do. It would be improper for the Court to entertain hypothetical reasons why the ALJ could have found that Ms. Houston can meet the coupon sorter job's reasoning requirement despite her limited RFC, when the ALJ did not supply any reasons himself. In short, the Court will not affirm the ALJ's decision based on the Commissioner's *post-hoc* rationale, particularly where that rationale appears at odds with the ALJ's other findings. *See Haga v. Astrue*, 482 F.3d 1205, 1208-09 (10th Cir. 2007) (declining to affirm ALJ's decision based on reasons Commissioner supplied for first time on appeal because court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself").

B. **The ALJ's error was not harmless.**

Having found that the ALJ erred in failing to obtain a reasonable explanation for the apparent conflict between the DOT and the VE's testimony regarding the representative occupation of coupon sorter, the Court must next consider whether that error is harmless. Specifically, taking the coupon sorter job out of the equation, the question remains whether the other two representative occupations on which the ALJ relied exist in such significant numbers that the ALJ's error is harmless. For the reasons discussed below, the Court must answer that question in the negative.

The Tenth Circuit "appl[ies] harmless error analysis cautiously in the administrative review setting." *Fischer-Ross*, 431 F.3d at 733. Nevertheless, "harmless error analysis . . . may be

appropriate to supply a missing dispositive finding" where a court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.* at 733-34 (quotation marks omitted).

To support a finding of nondisability at step five, the Commissioner must show that a claimant is able to perform other work that exists in "significant numbers in the national economy." 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c); *Haddock*, 196 F.3d at 1088. "[T]he issue of numerical significance entails many fact-specific considerations requiring individualized evaluation" and "should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (quotation marks omitted).

In *Trimiar v. Sullivan*, the issue was whether 650 to 900 regional jobs constituted a significant number. 966 F.2d 1326, 1329-32 (10th Cir. 1992). The *Trimiar* court observed that "[t]his Circuit has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number,'" and listed several factors courts may consider in evaluating the issue, including: (1) the level of a claimant's disability; (2) the reliability of the VE's testimony; (3) the distance the claimant is able to travel to work; (4) the isolated nature of the jobs; and, (5) the types and availability of such work. *Id.* at 1330 (quoting *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988)). In *Trimiar*, the Tenth Circuit ultimately determined that the ALJ had considered the requisite factors, and that substantial evidence supported his decision. *Id.* at 1332.

Several subsequent Tenth Circuit decisions have addressed the application of *Trimiar* and the issue of what constitutes a significant number of jobs. In *Allen*, the Tenth Circuit remanded when it determined that the ALJ had erroneously relied on two representative occupations to find that a significant number of jobs existed, and concluded that the ALJ "never had occasion to decide

16

if the [remaining] one hundred [statewide] jobs alone constituted a significant number under the statute." 357 F.3d at 1144. The *Allen* court rejected the Commissioner's harmless error argument, holding that it would constitute improper judicial factfinding to excuse the ALJ's failure to assess the numerical significance of the remaining jobs in accordance with *Trimiar* given the low number of jobs at issue. *Id.* at 1145.

In *Rhodes v. Barnhart*, 117 F. App'x 622 (10th Cir. 2004), the Tenth Circuit remanded where the ALJ stated on the record at the administrative hearing that 150 statewide jobs was not a significant number, but subsequently concluded in his decision that 150 statewide jobs and 14,000 national jobs did constitute a significant number, without any discussion of the *Trimiar* factors. *Id.* at 632. The *Rhodes* court explained that, because the ALJ failed to evaluate the *Trimiar* factors and make specific factual findings regarding numerical significance, it could not properly review the issue. *Id.*

In *Chavez v. Barnhart*, 126 F. App'x 434 (10th Cir. 2005), the Tenth Circuit remanded because: (1) the VE's testimony regarding two of the three representative occupations on which the ALJ relied conflicted with the DOT; (2) the ALJ did "not give explicit consideration to the [*Trimiar*] factors this court has recognized should guide the ALJ's commonsense judgment"; and, (3) the ALJ did not have an opportunity to evaluate whether 199 remaining regional jobs was a significant number. *Id.* at 436. And in *Norris v. Barnhart*, 197 F. App'x 771 (10th Cir. 2006), the Tenth Circuit remanded on other grounds, but noted that the ALJ's consideration of the *Trimiar* factors on remand could be "particularly important" given the fairly small number of available

jobs[14] and the claimant's inability to sit for more than 45 minutes at a time, which could preclude her from driving long distances to work. *Id.* at 777.

In contrast, in *Stokes v. Astrue*, 274 F. App'x 675 (10th Cir. 2008), the Tenth Circuit found harmless error where two of the four jobs the ALJ relied on were inconsistent with the claimant's RFC, because no reasonable factfinder could determine that the remaining 11,000 regional jobs and 152,000 national jobs were numerically insignificant. *Id.* at 684. And in *Rogers v. Astrue*, 312 F. App'x 138 (10th Cir. 2009), the Tenth Circuit implied that 11,000 nationally available jobs constituted a significant number, though it did not directly address the issue.[15] *Id.* at 142.

In *Raymond v. Astrue*, 356 F. App'x 173 (10th Cir. 2009), the question before the court was whether the job of rental clerk existed in sufficiently significant numbers. *Id.* at 177. The claimant argued that a significant number of jobs must exist in the *regional* economy to support a finding of nondisability, and that 385 rental clerk jobs in the region was insufficient. *Id.* The Tenth Circuit rejected the claimant's argument, holding that the controlling statutes, regulations, and case law all indicate that the proper focus is generally on jobs in the national economy.[16] *Id.*

---

[14] The available jobs at issue in *Norris* were surveillance system monitor (700 to 1000 jobs regionally and 65,000 to 85,000 nationally) and food and beverage order taker (600 jobs regionally and 125,000 nationally). 197 F. App'x at 777.

[15] The question the *Rogers* court decided was whether the ALJ failed to resolve a conflict between the DOT's exertional requirement for the job of hand packager and the VE's testimony that the claimant could do the job. 312 F. App'x at 141-42. According to the DOT, the hand packager job requires medium exertional capacity; however, the claimant's RFC limited him to lifting no more than 10 pounds at a time, and to lifting and carrying articles weighing no more than 3-5 pounds occasionally. *Id.* at 140-41. Because the VE testified, on the basis of his professional experience, that 11,000 *sedentary* hand packager jobs existed in the national economy, the *Rogers* court held that the apparent conflict between the DOT and the VE's testimony was reasonably explained, and the ALJ could rely on the testimony as substantial evidence to support her determination of nondisability. *Id.* at 142; *see* 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.").

[16] In 42 U.S.C. § 423, for example, Congress prescribed that "[a]n individual shall be determined to be under a disability only if . . . [he cannot] engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area . . . . '[W]ork which exists in the national economy' means work which exists in significant numbers *either* in the region where such individual lives *or* in several regions of the country." 42 U.S.C. § 423(d)(2)(A) (emphases added); *see also, e.g.*, 20 C.F.R. § 404.1560(c)(1) ("Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (*either* in

The court also noted that *Trimiar* does *not* hold that only regional jobs are relevant, or that a court must engage in a factorial analysis when the number of available jobs is much larger, as it was in *Raymond* (1.34 million national jobs). *Id.* at 178 n.2.

Finally, in *Botello v. Astrue*, 376 F. App'x 847 (10th Cir. 2010), the claimant argued that the ALJ failed to follow the district court's instruction to consider traveling distances pursuant to *Trimiar* on remand. *Id.* at 849-51. The *Botello* court held that, even though the ALJ failed to make any findings regarding traveling distances in his decision on remand, the court could uphold the ALJ's significant numbers decision based solely on the number of nationally available jobs, *i.e.,* 67,250. *Id.* at 851. The court, relying on *Raymond*, reiterated that *Trimiar* does not require an ALJ to engage in a factorial analysis to assess whether a significant number of jobs exist in the region when the number of nationally available jobs is significant and unchallenged. *Id.*

In the present matter, the ALJ did not explicitly evaluate the issue of numerical significance. (*See* AR 55.) Nor did he have occasion to consider the numerical significance of 932 wirecutter jobs and 7,659 plastic press molder jobs available nationally, excluding the inadequately supported 2,600 coupon sorter jobs. (*Id.*) Moreover, the total number of nationally available jobs remaining once the coupon sorter job is subtracted, *i.e.*, 8,591, is well below even the lowest number of nationally available jobs the Tenth Circuit has implied constitutes a significant number (albeit in an unpublished opinion and in *dicta*), *i.e.*, 11,000. *Rogers,* 312 F. App'x at 142; *cf. Evans v. Colvin*, 640 F. App'x 731, 736 (10th Cir. 2016) ("[T]he lowest number of [nationally available] jobs we have considered . . . to be sufficient so far for application of

---

the region where you live *or* in several regions in the country).") (emphases added); *Jensen*, 436 F.3d at 1168 (at step five, Commissioner's burden is to prove "that there are sufficient jobs in the national economy for a hypothetical person with [the claimant's] impairments"); *Grogan*, 399 F.3d at 1261 (at step five, Commissioner must show that claimant can perform work "in the national economy"); *Hamlin*, 365 F.3d at 1224 (at step five, ALJ must determine whether "jobs exist in the regional *or* national economy" that claimant could perform) (emphasis added).

harmless error" is 152,000.)  Thus, although the Court may "in the right exceptional circumstance" "supply a missing dispositive finding under the rubric of harmless error," here, the Court cannot "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the [significant numbers issue] in any other way." *Allen*, 357 F.3d at 1145.

In sum, lacking an explicit evaluation of numerical significance or an incontrovertibly significant number of available jobs, the Court cannot conclude that a reasonable factfinder would necessarily find a significant number of jobs available to Ms. Houston notwithstanding the ALJ's error regarding the coupon sorter job. It would be an improper exercise in judicial factfinding for the Court to excuse the ALJ's failure to assess the numerical significance of the wirecutter and plastic press molder jobs according to *Trimiar* given the low number of these jobs available nationally. *Allen*, 357 F. 3d at 1145; *Raymond*, 356 F. App'x at 178 n.2; *Botello*, 376 F. App'x at 851. The Court therefore finds that the ALJ's failure to obtain a reasonable explanation for the apparent conflict between the DOT and the VE's testimony regarding the coupon sorter job was not harmless error.

## IV. Conclusion

The Court will not address Ms. Houston's remaining claim of error because it may be affected by the ALJ's treatment of this case on remand. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

For the foregoing reasons, Ms. Houston's Motion to Reverse and Remand to Agency for Rehearing, with Supporting Memorandum (Doc. 15) is GRANTED.

IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent